## AFFIDAVIT OF SPECIAL AGENT PETER MILLIGAN
## IN SUPPORT OF AN APPLICATION FOR A COMPLAINT
## CHARGING RODRIGO TEVARES, ET AL.

I, Peter Milligan, state:

### INTRODUCTION

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2009. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am currently assigned to the Boston Group VI Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, and the use of firearms in drug trafficking crimes. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center.

2. This affidavit is based on an ongoing, multi-agency investigation in to the criminal activities of a criminal organization known as "Primeiro Comando da Massachusetts" or "PCM," as well as related criminal associates. The agencies involved in the investigation include: the ATF; the Department of Homeland Security, Homeland Security Investigations; the Massachusetts State Police; the Malden Police Department; the Chelsea Police Department; the Somerville Police Department; the Middlesex Sheriff's Office; the Lowell Police Department; the Weymouth Police Department; and the Marlborough Police Department.

3. This affidavit is being submitted in support of a criminal complaint against Rodrigo Tevares ("TEVARES"), Rony DaFreitas ("DAFREITAS"), and Elwood Cortes-Navedo ("CORTES-NAVEDO") for: alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) (TEVARES); and engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) (all defendants).

4.      The facts in this affidavit come from my review of records and/or reports, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is only intended to establish that there is probable cause for the requested complaint and does not set forth all of the facts in regard to this ongoing investigation.

## PROBABLE CAUSE

5.      Federal and local investigators have been involved in the investigation of PCM for approximately seven months. The PCM investigation arose out of an investigation of illegal firearms trafficking in communities North of Boston. The initial stages of the investigation involved the use of two Cooperating Witnesses (hereinafter referred to as "CW-1"[1] and "CW-2"[2]) to purchase illegal firearms from individuals. These gun buys led to the identification of PCM because its members/associates were actively involved in illegally selling firearms in communities such as Somerville and Malden.

6.      Except where otherwise noted, each of the controlled buys described below followed the same procedure. Prior to the controlled purchase, agents met with and searched the

---

[1] CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and Homeland Security Investigations ("HSI") in the past and continues to do so to the present. CW-1 has a minor criminal history and no convictions. CW-1 is receiving money from the government and has been promised protection against retaliation, including possible relocation, upon disclosure of CW-1's cooperation with law enforcement. CW-1 is also seeking immigration assistance to remain in the United States.

[2] CW-2 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-2's identity and have met with CW-2 personally. CW-2 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and HSI, in the past and continues to do so to the present. CW-2 has no criminal history. CW-2 is receiving money from the government and has been promised protection against retaliation, including possible relocation, upon disclosure of CW-2's cooperation with law enforcement. CW-2 is also seeking immigration assistance to remain in the United States.

CWs for contraband with negative results. Agents equipped the CWs with a vehicle containing a recording device which recorded the transaction in both audio and video. Agents then provided the CWs with official government funds for the controlled purchase. Agents and officers maintained surveillance of the CWs during the transaction. Following the transaction, the CWs returned to a predetermined location, where the CWs provided agents with the contraband which had been purchased and agents again searched the CWs for contraband with negative results.

### November 1, 2018 – Gun Deal

7. On October 31, 2018, CW-1 and TEVARES had multiple communications regarding the sale of a .45 caliber pistol. The two arranged to do the deal in Malden the following day. On November 1, CW-1 and CW-2 (who were in an undercover vehicle) met with TEVARES and two males – one male has been identified pursuant to the investigation and the other male remains unidentified. The identified male has been determined to be member/associate of PCM based on a review of social media postings by the individual, and admissions in those postings, as well as by other information generated pursuant to the investigation. TEVARES and the two males got into the back seat of the undercover vehicle. The recording device in the vehicle failed and, thus, there is no recording of the meeting. The identified male gave a pistol to TEVARES, after unloading it. TEVARES then provided the pistol to CW-2. CW-1 paid TEVARES for the pistol. The CWs were also able to obtain ammunition from TEVARES and the identified male. TEVARES and the identified male stated that they could supply the CWs with pistols and other firearms, including assault rifles and allegedly machine pistols. The CWs subsequently provided agents with a Kimber, Ultra Carry, .45 caliber pistol (serial number KU09711), and seven rounds of .45 caliber ammunition. Based

on a review of the seized firearm by the ATF, the Kimber .45 caliber pistol was manufactured outside of Massachusetts and, thus, traveled in interstate or foreign commerce. In addition, pursuant to a review of records of the Department of Homeland Security, TEVARES is presently in the United States illegally and, therefore, prohibited from possessing a firearm and ammunition.

**November 6, 2018 – Gun Deal**

8.  On November 6, 2018, CW-1 and TEVARES had communications regarding the sale of a .380 caliber pistol. The two arranged to do the deal in Malden that day. CW-1 and CW-2 (who were in an undercover vehicle) met with TEVARES at a parking lot in Malden. TEVARES got into the undercover vehicle. TEVARES then provided the pistol to CW-2. CW-2 paid TEVARES for the pistol. TEVARES stated that he had a "9" [9mm pistol] and a "40" [.40 caliber pistol] available. He also stated that he had a source for firearms in New York. The CWs subsequently provided agents with a Taurus, PT738 TCP, .380 caliber pistol with an obliterated serial number. Based on a review of the seized firearm by the ATF, the pistol was manufactured outside of Massachusetts and, thus, traveled in interstate or foreign commerce.

**November 28, 2018 – Gun Deal**

9.  On November 28, 2018, CW-1 and TEVARES had multiple communications regarding the sale of a .38 caliber revolver. The two arranged to do the deal in Malden that day. During the final communication, TEVARES informed CW-1 that his associate "Bahianinho" would meet with CW-1 to deliver the revolver. "Bahianinho" has been identified as Joao Pedro Marques Guimares Gama ("GAMA"), an admitted member of PCM, who has committed various crimes on behalf of the gang including drug dealing, firearms trafficking, and armed robberies.

CW-1 and CW-2 (who were in an undercover vehicle) met with GAMA at a parking lot in Malden. GAMA was driven to the deal by an individual subsequently identified as Marcio Costa ("COSTA"). Pursuant to the ongoing investigation, COSTA has been identified as a leader in PCM (referred to as the "Boss" by GAMA), and has been involved in drug trafficking, firearms trafficking and conspiring to commit armed robbery – both COSTA and GAMA are charged with numerous federal crimes based on their membership in PCM in a different federal complaint filed in conjunction with this complaint. GAMA got into the undercover vehicle. GAMA provided a .38 caliber revolver to CW-2. CW-2 paid GAMA for the revolver. GAMA stated that the revolver was "Rodrigo's" – i.e., TEVARES' gun. GAMA also stated that he could supply the CWs with guns and that he had a source for firearms in New York. Following the deal, TEVARES called CW-1 to confirm that the deal went well. He further stated that he would have additional guns for sale soon. The CWs subsequently provided agents with a Smith & Wesson, model 31, .38 special revolver (serial number J503213). Based on a review of ATF records, the seized firearm was originally sold in Florida in 1977, and thus has traveled in interstate or foreign commerce.

**November 30, 2018 – Gun Deal**

10. On November 29 and November 30, 2019, CW-1 had multiple communications with TEVARES regarding the purchase of a .32 caliber pistol. CW-1 and TEVARES agreed to do the deal on November 30 in Malden. CW-1 and CW-2 were involved in the deal on November 30. Prior to the actual deal, Fernando DeOliveira ("DEOLIVEIRA") contacted CW-1 and confirmed that he would deliver the handgun for TEVARES. DEOLIVEIRA arrived in a black Mercedes. The CWs recognized DEOLIVEIRA as being involved in the November 6 gun

sale – DEOLIVEIRA acted as a look-out during the November 6 deal. DEOLIVEIRA got into the undercover vehicle and provided CW-2 with a pistol, extra magazines and a box of ammunition. During the deal, DEOLIVEIRA noted that he was delivering the gun for "Rodrigo" – i.e., TEVARES. The CWs left the area, and were kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, the CWs provided agents with a Kel-Tec, P-32, .32 caliber pistol (with an obliterated serial number), three magazines, 43 rounds of ammunition, and a black leather holster. DEOLIVEIRA is being charged with federal crimes in a different federal complaint filed in conjunction with this complaint. Based on a review of the seized firearm by the ATF, the pistol was manufactured outside of Massachusetts and, thus, traveled in interstate or foreign commerce.

### January 8, 2019 – Gun Deal

12.     On January 8, 2019, CW-1 and CW-2 made a controlled purchase of a handgun and ammunition from TEVARES and DAFREITAS in Lowell. After following the procedures described above, agents surveilled the CWs to a parking lot in Lowell. TEVARES and DAFREITAS entered the undercover vehicle. CW-1 eventually purchased a handgun and ammunition from TEVARES and DAFREITAS after discussing the logistics of the deal. TEVARES obtained the handgun and ammunition from a nearby vehicle. CW-2 paid part of the purchase price to DAFREITAS and part to TEVARES. During the meeting, DAFREITAS asked if the CWs were shipping guns to Brazil. He also stated that he could supply the CWs with firearms. Following the deal, at the meeting site, the CWs provided agents with a Ruger, SR40C, .40 caliber pistol (serial number 345-29107), and ten rounds of ammunition. Based on a review of the seized firearm by the ATF, the pistol was manufactured outside of Massachusetts

and, thus, traveled in interstate or foreign commerce.

### February 6, 2019 – Gun Deal

13. On February 6, 2019, CW-1 and CW-2 made a controlled purchase of a handgun from TEVARES, DAFREITAS and CORTES-NAVEDO in the parking lot of the Raymond Lord Memorial Swimming Pool in Lowell. After following the procedures described above, agents surveilled the CWs to the pool parking lot. TEVARES and DAFREITAS arrived in a gray Suzuki SUV. CORTES-NAVEDO arrived in a black Mazda sedan (registered to CORTES-NAVEDO at 543 Middlesex Street in Lowell). The CWs observed TEVARES walk to the black Mazda and obtain a handgun from CORTES-NAVEDO and return to the undercover vehicle. The CWs purchased the handgun from TEVARES. DAFREITAS drove up alongside the UC vehicle and directed TEVARES to pay CORTES-NAVEDO. The CWs observed TEVARES walk to CORTES-NAVEDO's vehicle and then return to the gray Suzuki SUV. Surveillance personnel observed CORTES-NAVEDO driving the black Mazda sedan as he left the parking lot and turned onto the street to leave the area. The CWs left the area, and were kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, the CWs provided agents with a Taurus, PT-22, .22LR pistol (serial number Y134572). The recording equipment malfunctioned and did not record the transaction. Based on a review of the seized firearm by the ATF, the pistol was manufactured outside of Massachusetts and, thus, traveled in interstate or foreign commerce.

### February 14, 2019 – Gun Deal

14. On February 14, 2019, CW-1 and CW-2 made a controlled purchase of a handgun and ammunition from DAFREITAS and CORTES-NAVEDO in the parking lot of CORTES-NAVEDO's residence at 543 Middlesex Street in Lowell. Prior to the deal, TEVARES asked

CW-2 to meet him at 543 Middlesex Street in Lowell. After following the procedures described above, agents surveilled the CWs to the parking lot for 543 Middlesex Street. Surveillance personnel observed CORTES-NAVEDO's black Mazda sedan parked on the street in front of 543 Middlesex Street. The CWs were under constant surveillance by agents/officers during the operation. DAFREITAS arrived at the rear parking lot of the apartment building, parked next to the undercover vehicle and entered the rear passenger seat of the vehicle. A short time later CORTES-NAVEDO exited the rear door of 543 Middlesex Street and met with the CWs in the rear parking lot. CORTES-NAVEDO stood next to the undercover vehicle but did not get into the vehicle. DAFREITAS directed CW-2 to pay CORTES-NAVEDO $700 and to pay DAFREITAS $900. CORTES-NAVEDO handed CW-2 a handgun and ammunition and CW-2 paid CORTES-NAVEDO $700. The CWs observed CORTES-NAVEDO return to the apartment building via the rear entrance. DAFREITAS told the CWs that CORTES-NAVEDO called him prior to his arrival and reported he observed the CWs parked in the rear parking lot from his window. A short time later, TEVARES called CW-1 and asked CW-1 how much they paid for the handgun. CW-1 responded. TEVARES asked for DAFREITAS to be put on the phone. CW-1 handed the phone to DAFREITAS. The CWs left the area, and were kept under surveillance as they proceeded to a prearranged meeting site. At the meeting site, the CWs provided agents with a Springfield Armory, XD-9 subcompact, 9mm pistol (serial number obliterated), and twelve rounds of ammunition. Based on a review of the seized firearm by the ATF, the pistol was manufactured outside of Massachusetts and, thus, traveled in interstate or foreign commerce.

## CONCLUSION

15.     Based on the information described above, I have probable cause to believe that the defendants as identified above have committed federal crimes as identified above. In light of the defendants' association with firearms, I further request that agents/officers be allowed to execute any arrest or search warrants without knocking and announcing as such actions would potentially place executing agents/officers in danger.

Sworn to under the pains and penalties of perjury,

PETER MILLIGAN
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on 4/24/19

HONORABLE M. PAGE KELLEY
United States Magistrate Judge